[Cite as *State v. Cardell*, 2025-Ohio-5197.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

  Appellee

v.

Andrew Cardell

  Appellant

Court of Appeals No. L-25-00006

Trial Court No. CR 23 165

**<u>DECISION AND JUDGMENT</u>**

Decided: November 18, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**Zmuda, J.**

## I. Introduction

{¶ 1} Appellant, Andrew Cardell, appeals his conviction for one count of felonious assault, following a jury trial and sentencing by the trial court to a prison term of three to four-and-a-half years. Finding no error, we affirm.

## II. Background and Procedural History

{¶ 2} On March 23, 2023, Cardell sustained an injury to his arm while police attempted to remove him from his vehicle, following a traffic stop. Police transported Cardell to the University of Toledo Medical Center (UTMC) for medical treatment at 1:45 a.m. While officers completed the traffic citation, Cardell was handcuffed to the hospital bed. After issuing Cardell his citation, police removed the handcuffs and left the hospital.

{¶ 3} Over the next few hours, Cardell permitted hospital staff to x-ray his elbow and assess him. Cardell had an open fracture to his elbow, causing significant pain as well as a risk of infection. Despite the seriousness of his injury, Cardell refused treatment, and the attending physician sought a psychiatric consultation. During this time, Cardell paced his room and the hallway, called staff names, and threw a chair outside his room near the nurses' station. Following assessment from the psychiatric resident, Cardell was not placed on involuntary hold, but instead, medications were recommended to calm Cardell for the protection of Cardell and staff.

{¶ 4} Nurse SL volunteered to try to gain Cardell's cooperation to avoid forced medication. SL had specialized training in de-escalation techniques. After believing she had obtained Cardell's consent for administration of the medication, SL took a step toward Cardell, and Cardell hit her in the face with a closed fist. SL fell to the floor, and Cardell was subdued and given the medication. Around 1:30 p.m., Cardell decided to leave the hospital against medical advice. Police then took him into custody based on his assault of SL.

2.

{¶ 5} The state indicted Cardell on one count of felonious assault in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree. At his arraignment, Cardell entered a plea of not guilty by reason of insanity, and the trial court referred Cardell for a competency evaluation, followed by a second-opinion competency evaluation pursuant to R.C. 2945.371. After hearing pursuant to R.C. 2945.37 and 2945.38, the trial court found Cardell competent to stand trial, and Cardell withdrew his plea of not guilty by reason of insanity.

{¶ 6} Cardell's case proceeded to a jury trial, beginning on November 12, 2024. The state presented three witnesses: Maumee police sergeant Paul LaPlante, UTMC police officer Vincent Betori, and the victim, nurse SL.

{¶ 7} Sergeant LaPlante testified regarding the traffic stop and injury to Cardell's elbow. LaPlante responded to assist Perrysburg police with a traffic pursuit that had entered Maumee. LaPlante encountered Cardell's vehicle stopped at the intersection of Reynolds Road and Dussel Drive around 12:30 a.m. and ordered Cardell out of the vehicle. Instead of exiting his vehicle, Cardell "pointed his finger at us like it was a gun" and refused to exit the car. After over a hundred commands to exit by three different officers, police used non-lethal force to gain Cardell's compliance, striking Cardell with a bean bag from a bean bag shotgun.

{¶ 8} Once Cardell had exited the vehicle, he was transported to UTMC for treatment. LaPlante testified that Cardell was not under arrest, but he was handcuffed to the bed while an officer prepared Cardell's traffic citation. After giving Cardell his citation, the handcuffs were removed and police left. LaPlante testified that "once we take

3.

them to the hospital, they have to sign out against medical leave," and Cardell was not under arrest.

{¶ 9} Officer Vincent Betori testified that he was working at UTMC the time of the assault, in his capacity as a UT police officer working on the Health Science campus. He was dispatched to the scene around 2:50 a.m., based on reports of a disorderly patient. Upon arrival, he observed Cardell outside of his room, "yelling and not listening to the commands of the nurses." The state played Officer Betori's body-worn camera video for the jury, which showed Cardell's conduct – pointing "finger guns" at nursing staff and Betori, throwing a chair, and pacing around outside his room. Cardell eventually went back into his room, and during this time, he was not under arrest.

{¶ 10} The assault occurred around 4:00 a.m., after the decision was made to administer medications to calm Cardell. Betori testified that after SL entered the room, Cardell struck her with a closed fist on the left side of her face, with much of the assault recorded on the body-worn camera. SL fell to the floor, crying out. Betori testified that at the time SL was punched, the syringe with the medication remained capped, or "not open to be used." After Cardell was restrained, Betori checked on SL and documented her injuries with photographs.

{¶ 11} SL also testified. She indicated that, while other staff, security, and a police officer stood watch, she entered the room, introduced herself, and explained the medication recommendation to Cardell, informing him that the medications would be administered forcefully if he refused. After Cardell declined the medication, SL exited the room. While personnel were gathering to administer the forced-medication, SL asked for

4.

another chance to gain consent from Cardell. She re-entered the room, injection in hand, and asked again for his consent. SL testified:

> And that's when he was still sitting on the edge of the bed and he said, okay. He stood up and he turned to his right, like in a motion like he was going to slide his pants down a little bit to give me access to give the injection, and that's when I stepped forward. As I was stepping forward, I was looking down to open the alcohol pad, and I looked up and that's when he spun around and I saw his fist and then felt intense pain and dark.

{¶ 12} After falling to the floor, SL heard a scuffle as someone took the injection from her. She exited the room, either with help or on her own, and "then the next thing I know, the ER attending was at my side looking and I just needed air[.]" SL made it outside with help and experienced "a full-blown panic attack." SL was bleeding, and needed medical treatment, including a CT scan to rule out broken bones around her eye, and IV fluids and anti-nausea medication. SL sustained a closed head injury with concussion, and contusion to the eye. SL testified she was unable to drive for days due to her symptoms and experienced episodes of vertigo that resulted in a subsequent fall at home and a workers compensation claim. SL described her injury from the punch to the eye as intense and debilitating. SL testified that she required treatment with occupational health, followed by vestibular therapy for months before her symptoms were resolved.

{¶ 13} Regarding Cardell's ability to leave, SL testified that the gathered individuals were between Cardell and the door, but no one had told Cardell he was not free to leave. Furthermore, Cardell was not handcuffed to the bed at the time of the assault. Finally, SL testified that Cardell "made it a point afterwards to make a remark about his arm hurting, but not nearly as bad as that nurse's face does."

5.

{¶ 14} The state rested after admitting exhibits, which included Cardell's treatment record, the video from Betori's body-worn camera, photographs of SL's injury, and SL's treatment records from the ER, occupational health, and vestibular therapy. Cardell moved for acquittal pursuant to Crim. R. 29, and the trial court denied the motion.

{¶ 15} The matter proceeded with the defense case. Cardell did not testify and presented no other evidence. Instead, the defense rested and Cardell renewed his Crim.R. 29 motion for acquittal, which the trial court again denied. As there was no defense case in chief, the state presented no rebuttal evidence.

{¶ 16} Following the close of testimony, the trial court instructed the jury, providing definitions on the elements of felonious assault and the lesser offense of assault. The court also instructed the jury on the affirmative defense of self-defense, outlining the state's burden of proving that Cardell did not act in self-defense beyond a reasonable doubt. The self-defense instruction was provided over the objection of the state based on the evidence that demonstrated SL attempted to administer the medication after Cardell communicated his consent. The self-defense instruction provided by the trial court was as follows:

> Self-defense. The Defendant is allowed to use non-deadly force in self-defense. The State must prove beyond a reasonable doubt that the Defendant, when using non-deadly force, did not act in self-defense. To prove that the Defendant's use of non-deadly force was not in self-defense, the State must prove beyond a reasonable doubt at least one of the following: That the Defendant was at fault in creating this situation that gave rise to his act of violence, or that the Defendant did not have reasonable grounds to believe that he was in immediate danger of bodily harm, or that the Defendant did not have an honest belief, even if mistaken,

6.

that he was in immediate danger of bodily harm, or that the Defendant used unreasonable force.

Non-deadly force means any force that does not carry with it a substantial risk that it will proximately result in the death of a person. Force means any violence, compulsion or constraint physically exerted by any means upon or against a person or thing. The Defendant did not act – so this describes what at fault is. The Defendant did not act in self-defense if the State proved beyond a reasonable doubt that the Defendant was at fault in creating the situation that resulted in his act of violence. The Defendant was at fault if the Defendant was the initial aggressor and [SL] did not escalate the situation by being the first to use or attempt to use non-deadly force, or the Defendant did not withdraw from the situation.

The test for reasonable grounds and honest belief. In deciding whether the Defendant had reasonable grounds to believe, and his honest belief that he was in immediate danger of bodily harm, you must put yourself in the position of the Defendant with his characteristics, his knowledge or lack of knowledge, and under the circumstances and conditions that surrounded him at the time.

You must consider the conduct of Nurse [SL] and decide whether her actions and words caused the Defendant to reasonably and honestly believe that Defendant was about to receive bodily harm.

Possibility of retreat. In determining whether the Defendant, in using force in self-defense, reasonably believed that the force was necessary to prevent injury, loss or risk to life or safety, you may not consider the possibility of retreat by the Defendant. Substantial risk means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist.

Unreasonable force. A person is allowed to use force that is reasonably necessary under the circumstances to protect himself from an apparent danger. For you to find the Defendant guilty, the State must prove beyond a reasonable doubt that the Defendant used more force than reasonably necessary, and that the force used was greatly disproportionate to the apparent danger.

Conclusion. If you find that the State proved beyond a reasonable doubt all the elements of felonious assault, and that the State proved beyond a reasonable doubt that the Defendant did not act in self-defense, you must find the Defendant guilty of felonious assault.

If you find that the State failed to prove beyond a reasonable doubt any of the elements of felonious assault, or if you find that the State failed to prove beyond a reasonable doubt that the Defendant did not act in self-defense, you must find the Defendant not guilty.

The parties' closing arguments followed the trial court's instruction of the jury.

{¶ 17} The state argued that it demonstrated Cardell did not act in self-defense, referencing the testimony of SL and Betori, as well as the body-worn camera recording, which the state argued showed a "sucker punch." The state noted the evidence showing SL wanted to administer the medication to Cardell with his consent, and on her first attempt Cardell said no, and SL left the room. When SL attempted to administer the medication after returning to the room, she did so because Cardell appeared to consent. The state further argued that Cardell's "consent" was a trick, and therefore, Cardell caused the situation that led to the use of force. In the alternative, the state argued that Cardell used more force than was necessary to repel any unwanted medication, in that Cardell punched SL with such force he knocked her to the ground and SL endured great pain and suffering from her injury.

{¶ 18} In contrast, Cardell's trial counsel argued that Cardell was consistent in refusing treatment and the "medical staff would not take no for an answer." Cardell's counsel argued that Cardell felt threatened by all the "authority figures …all around him" and Cardell's position was a predictable reaction to being cornered in his room, not a sucker punch. He also argued that SL did not sustain significant physical injury.

8.

{¶ 19} After deliberations, the jury found Cardell guilty of felonious assault in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree. The trial court continued the matter for a presentence investigation and sentencing.

{¶ 20} On December 17, 2024, the trial court sentenced Cardell to an indefinite prison term of three years to four-and-a-half years. Cardell filed a timely appeal of the judgment.

### III. Assignment of Error

{¶ 21} Cardell presents a single assignment of error in his appeal as follows:

1. The trial court abused its discretion when it convicted Mr. Cardell of felonious assault as that conviction is against the manifest weight of the evidence presented.

### IV. Analysis

{¶ 22} Cardell argues that he had a fundamental right to refuse treatment, and as a result, was entitled to use force against another to defend himself from unwanted medical treatment. Cardell acknowledges that the trial court permitted his claim of self-defense and instructed the jury accordingly, and as a result, the state was required to disprove he acted in self-defense beyond a reasonable doubt. *State v. Messenger,* 2022-Ohio-4562, ¶ 16. In arguing his conviction was against the manifest weight of the evidence, Cardell argues the state "failed to rebut" evidence of self-defense.

{¶ 23} As an initial matter, we note that the state had no ability to present rebuttal witnesses. Simply put, rebuttal evidence "becomes relevant only to challenge the evidence offered by the opponent." *State v. McNeill,* 83 Ohio St.3d 438, 446 (1998). Because Cardell presented no defense case, the state had no evidence to rebut. Therefore,

9.

our review is limited to the evidence presented by the state as to the evidence of self-defense, and whether this evidence disproved Cardell's claim of self-defense beyond a reasonable doubt.

{¶ 24} Cardell argues his conviction was against the manifest weight of the evidence because the state failed to satisfy its burden of demonstrating he did not act in self-defense. In applying the manifest weight standard, we "must determine in view of the entire record 'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Knuff,* 2024-Ohio-902, ¶ 207, quoting *State v. Group,* 2002-Ohio-7247, ¶ 77, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). The state's burden of disproving self-defense is "subject to a manifest-weight review on appeal." *Knuff* at ¶ 208, quoting *Messenger* at ¶ 27.

{¶ 25} The elements of a self-defense claim using non-deadly force include:

> (1) that the defendant was not at fault in creating the situation giving rise to the affray;
> (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and
> (3) that the defendant did not violate any duty to retreat or avoid the danger.

*Messenger* at ¶ 14, quoting *State v. Barnes,* 94 Ohio St.3d 21, 24 (2002). To sustain its burden of proof, the state need only to disprove one of these elements of self-defense, beyond a reasonable doubt. *Knuff* at ¶ 191. Furthermore, "a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the appellant's version" and rejected claims of self-defense. *State v. Jamii,*

10.

2023-Ohio-4671, ¶ 47 (10th Dist.), citing *State v. Gale,* 2006-Ohio-1523, ¶ 19 (10th Dist.); *Messenger* at ¶ 49.

{¶ 26} Upon review of the elements of self-defense and the record, we find the jury's verdict was supported by the manifest weight of the evidence, as the state disproved all three elements beyond a reasonable doubt. The state presented evidence demonstrating Cardell invited the contact by SL by consenting to the medication as an alternative to several people restraining him and forcing administration of the medication. Additionally, SL testified that Cardell commented on the pain he inflicted, noting his arm did not hurt as much as "that nurse's face does." Finally, the evidence demonstrated Cardell struck SL with a closed fist in reaction to her attempt to administer the medication, even though SL complied with his earlier refusal and had obtained his apparent consent to avoid forced administration of the medication.

{¶ 27} We have previously recognized that the law does not permit inviting an encounter and then claiming self-defense, a concept "broader than simply not being the immediate aggressor." *State v. Williams,* 2025-Ohio-2033, ¶ 82 (6th Dist.), quoting *State v. Woodson,* 2022-Ohio-2528, ¶ 82 (6th Dist.) (additional citations omitted.). We have also determined that subsequently bragging about causing the injury is evidence that the defendant was the aggressor and lacked a bona fide fear of imminent danger or bodily harm. *State v. Coutcher,* 2024-Ohio-4721, ¶ 30 (6th Dist.)

{¶ 28} While Cardell argued that his right to refuse medication is a fundamental right, the law is well-settled that hospitals may forcefully administer medication when there is an imminent danger of harm to the patient or others. *Steele v. Hamilton Cty.*

*Community Mental Health Bd.,* 90 Ohio St.3d 176, 183-184 (2000). In this case, however, the State's evidence demonstrated Cardell consented to SL giving him the medication as an alternative to receiving the medication while restrained by several staff members. Thus, with no other evidence demonstrating a lack of consent, we need not consider whether self-defense applies to a medical provider's determination that forced medication is necessary under these circumstances.

{¶ 29} Finally, the state presented evidence demonstrating that Cardell's use of force was unreasonable based on the circumstances. Self-defense is not available if the use of force was greater than the situation reasonably demanded. *State v. Barnes,* 2025-Ohio-1684, ¶ 21 (6th Dist.), citing *State v. Johnson,* 2009-Ohio-3500, ¶ 12 (6th Dist.) (additional citation omitted.). In this case, SL had already demonstrated to Cardell that she would comply with his wishes should he refuse medication. Therefore, striking SL with a closed fist in the eye was unreasonable under the circumstances, based on the evidence in the record.

{¶ 30} Thus, SL's testimony, if deemed credible by the jury, supported a finding that Cardell was at fault in creating the situation that led to the assault against SL, that he lacked a belief of imminent danger of bodily harm, and he used unreasonable force to repel SL's attempt to administer the medication. With no conflicting evidence in the record, we do not find the jury lost its way in believing SL's testimony regarding the assault, and find the verdict, rejecting Cardell's self-defense claim based on proof beyond a reasonable doubt, was not against the manifest weight of the evidence.

{¶ 31} We find Cardell's sole assignment of error not well-taken.

12.

## V. Conclusion

**{¶ 32}** We affirm the judgment of the Lucas County Common Pleas Court.

Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

JUDGE

Gene A. Zmuda, J.

JUDGE

Charles E. Sulek, P.J.
CONCUR.

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.