[Cite as *State v. Buck*, 2026-Ohio-2115.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo

  Appellee

v.

Dennis Alan Buck, Jr.

  Appellant

Court of Appeals No. {48}L-25-00174

Trial Court No. CRB-25-03547

**DECISION AND JUDGMENT**

Decided: June 5, 2026

\* \* \* \* \*

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

\* \* \* \* \*

**OSOWIK, J.**

**{¶ 1}** This is an appeal from the judgment by the Toledo Municipal Court, which sentenced appellant, Dennis Allen Buck, Jr., to 180 days in prison after a bench trial, at which he claimed self-defense, after he was convicted of assault. For the reasons set forth below, this court affirms the trial court's judgment.

**{¶ 2}** Appellant sets forth the following two assignments of error:

 1. The State of Ohio did not prove beyond a reasonable doubt that
   Appellant did not act in self-defense and/or that he initiated the

conflict, such that the conviction for assault is against the manifest weight of the evidence.

2. The trial court abused its discretion when it denied Appellant's motion for acquittal pursuant to Crim. R. 29.

## I. Background

{¶ 3} On April 28, 2025, appellee, the city of Toledo, filed a criminal complaint against appellant for one count of assault, a violation of R.C. 2903.13(A), and a first-degree misdemeanor under R.C. 2903.13(C). R.C. 2903.13(A) states, "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Appellee averred that based on statements by the 54-year-old appellant and the 62-year-old victim, who were strangers to each other, "The defendant did knowingly cause, and admit to causing physical harm by kicking and punching [the victim] in the face and back causing a laceration and swollen right eye and back pain. The victim and the defendant are the sources of this information." It is undisputed that the police found victim had a deep laceration over one eye that was swollen shut, plus bruising and scrapes on her back, arms, and legs. Her clothing was torn and bloodied. The victim required stitches for the laceration and underwent eye surgery to replace her shattered eye lens. She has permanent vision damage.

{¶ 4} Appellant entered a not-guilty plea, and the matter proceeded to a bench trial on July 9, 2025. Prior to trial, appellant filed a notice of intent to assert the self-defense of stand-your-ground under Crim.R. 12.2.

2

**{¶ 5}** During the trial, four witnesses testified, and the trial court admitted 27 exhibits into evidence. In addition, appellant twice moved for acquittal under Crim.R. 29: first after the close of appellee's case, and then at the close of appellant's case. The trial court denied both motions.

**{¶ 6}** Prior to convicting appellant of assault, the trial court first reviewed the evidence:

> All right, obviously, the Court heard testimony from Officer Lambrecht who responded to the 911 call to the victim's residence; from [V.M], the victim in this matter; from Officer Gee, TPD officer that responded to defendant's home, and then from the defendant, Mr. Dennis Buck, Jr.
>
> I've had an opportunity to view the exhibits, which included two body-worn cameras, one from each officer, and then various photographs of the victim's injury, placement of the van, the alley, the van in question, and then the defendant's injuries to his right pinky finger. . . .
>
> [The victim] indicated on testimony that she tried to stop at a certain friend's house. They didn't answer the door so she proceeded a little further. Was concerned about her car overheating. It was knocking and so she pulled not in front of anyone's house. There is an alley that runs alongside the defendant's house and then there's a field off the alley. She chose not to park in the alley blocking the alley but pulled off to the side on a grassy field across the alley from the defendant's home. And then she proceeded to exit her van, walk across what would be the alley and then the defendant's property to the next-door neighbor . . . to knock on his door to see if he had any oil. While she was on the porch, again, testimony is consistent, the defendant exited his home to tell her to move her van.
>
> Here the testimony, obviously, goes different directions in terms of what was said prior to the incident. The victim indicated he came out very forcefully calling her names, screaming at her to move her effin' van, get it off his property, and he doesn't care if it's broken down. She indicated that she . . . left the porch and was going toward the van. She noticed the defendant was at her van. He testified he was at her van taking pictures, testified as to Exhibit G. . . . So clearly he was pretty close to the van. She testified that he was and she was worried because she left her purse, her phone in the van and he was right at the van, so she exited the friend's porch and came to her van. Defendant's Exhibit F is a photograph the

defendant took, per his testimony, that she was coming at him. And it clearly shows she's in the alley coming toward the van and coming toward the defendant who is standing at the van. She testified it was very gravelly and uneven and that she was in unstable slides, which you can see from the picture that she is walking with her head down minding the gravel in those slides which it is difficult to walk on that type of gravel.

From then on the testimony diverges. She indicates that he was screaming at her calling her racial slurs and that he lunged at her. Her testimony is consistent with the Officer's body-worn camera, Officer Lambrecht, when he responded to the scene, in that she said he came right at me, he was screaming at me. He lunged at me. I thought he was going to hit me so I swung at him; I swung my keys at him.

Defendant says she swung her keys at me. Victim indicates she doesn't know if it made contact, she just swung her keys. And they're on a lanyard and hanging from her hand which, again, you can see from Defendant's Exhibit F. Defendant indicates that it did strike him causing a small bump on his shoulder, and then in response to that he "fucking blasted her." His words. His testimony was interesting to the Court when questioned on cross about did she make any statements, he said I didn't take anything she said seriously. I didn't take it serious; I've been trained in martial arts. So if [the victim] said anything to the defendant, by his own testimony, he did not take it seriously.

The defendant testified that . . . his finger was bitten to the point where he had to have surgery because tendons were broken, damage to the hand because of a bite. The video evidence shows no injury to his hand. We watched it over and over. . . . You can see the pinky. There is absolutely no red mark, no blood. An injury from a bite that extensive would show. The Officer would have noted it. There is no sign of injury when he's closing the door, opening the door, grabbing his phone, punching on his phone or when he's handcuffed. I do not find the defendant's testimony credible in that regard.

{¶ 7} The trial court then specifically addressed the evidence surrounding appellant's self-defense claim:

You are alleging self-defense. Your testimony revealed you were in your house working on a window when she pulled up and broke down near your home. She pulled into an alley and made the decision to pull a little bit off the alley into a field to not leave her car blocking and then went for help. Your testimony is that you exited the home and confronted her about her car being on your property and demanded that she move her broken

4

down car. In being successful in a self-defense claim, first the defense must present evidence that tends to support that the accused person used whatever force he used in self-defense. That's not a very difficult burden to meet. . . . I do find that you've met the burden of production of self-defense. That there was an altercation with a swinging of the keys and that the production of a self-defense argument is there to go forward on that.

Then the burden switches to the State to disprove at least one element of the self-defense in order to overcome that self-defense argument. . . . Her car simply broke down across the alley from your home. And you exited your home, confronted her, went to her car, screamed at her, started taking pictures of her and then lunged at her. You were the one who initiated the conflict. Had you not exited your home, nobody would be here. . . .

The individual must have reason to believe they were in imminent danger of death or serious physical harm. Again, you were in your home. You came out and initiated the conflict and the dangerous situation.

The force you used in self-defense must be reasonable and necessary to prevent perceived harm. Testimony was that . . . you lunged at her . . . and that she in reaction swung her hand that contained keys and then you blasted her and beat her down causing substantial injury to her.

I do not find that the force was reasonable to the danger at hand. I do not find that you were in imminent danger of death or serious physical harm, and I do not find that you were not not at fault in creating the situation. So I do believe the State has met its burden in disproving the self-defense argument.

. . .

Based on all of that, . . . I do not find that the defendant acted in self-defense, and I do find you guilty of the charge of assault that you knowingly caused physical harm to the victim. So I have made a finding of guilty.

{¶ 8} Sentencing occurred on July 30, 2025, at which the trial court sentenced appellant to serve 180-days in the Corrections Center of Northwest Ohio. Appellant timely appealed.

## II. The Self-Defense Claim

{¶ 9} In support of his first assignment of error, appellant argues his conviction was against the manifest weight of the evidence because appellee failed to satisfy its

burden of demonstrating he did not act in self-defense. Appellant argues the victim initiated the altercation in four ways: by trespassing on his porch, with verbal insults in response to appellant's polite request to move her vehicle, by swinging her keys at him first "in order to intimidate him into backing away from the vehicle," and by choosing "to bite Appellant's finger so hard she broke it." The trial court should not have "completely overlooked the possibility that the alleged mechanical problems were simply a ruse for having stopped at a drug house located next door to Appellant, and which Appellant disapproved of." Appellant further argues that he had "no duty to retreat in this situation because the car was arguably parked on Appellant's family property, such that he was arguably justified in trying to defend his property against trespass."

{¶ 10} This court has repeatedly held, "Self-defense is an affirmative defense whereby the defendant, in essence, admits to the facts of the state's case but offers additional facts that justify or excuse the defendant's use of force." *Maumee v. Yeager,* 2024-Ohio-858, ¶ 65 (6th Dist.); *State v. Sepeda*, 2022-Ohio-1889, ¶ 51 (6th Dist.); *State v. Fisher*, 2024-Ohio-5520, ¶ 42 (6th Dist.) ("Essentially, the defense of self-defense is one that does not negate the state's case, but instead presumes the state has established a prima facie case but nevertheless defeats the charge based on a legal avoidance of the charge."). The Ohio Supreme Court agrees. *State v. Martin*, 21 Ohio St.3d 91, 94 (1986), citing *State v. Poole*, 33 Ohio St.2d 18, 19 (1973).

{¶ 11} "There are two types of self-defense in Ohio: (1) defense against danger of bodily harm, also known as non-deadly force self-defense; and (2) defense against danger

6

of death or great bodily harm, or deadly force self-defense." *State v. McClain*, 2025-Ohio-577, ¶ 19 (6th Dist.). In this matter appellant admits he used non-deadly force self-defense against the victim.

> To support a claim of self-defense involving the use of non-deadly force, the defendant must prove, by a preponderance of the evidence, that: (1) he was not at fault in creating the situation giving rise to the altercation; and (2) he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm.

*Yeager* at ¶ 67. The defendant must also prove he did not violate any duty to retreat or avoid the danger. *State v. Cardell*, 2025-Ohio-5197, ¶ 25 (6th Dist.).

{¶ 12} Under R.C. 2901.05(B)(1), appellant bore the initial burden of production, "a burden that is not all that heavy." *State v. McClain*, 2025-Ohio-577, ¶ 21 (6th Dist.), citing *State v. Messenger*, 2022-Ohio-4562, ¶ 20, 22. On appeal, appellant's burden of production is subject to a sufficiency-of-the-evidence standard of review. *Id.* In this matter, appellee does not challenge the trial court's finding that appellant met his burden of production to claim self-defense.

{¶ 13} The burden of persuasion then shifted to appellee to prove beyond a reasonable doubt that appellant did not use his force in self-defense. *State v. Carter*, 2024-Ohio-5031, ¶ 45 (6th Dist.). Appellee can defeat appellant's self-defense claim by disproving any one of the elements beyond a reasonable doubt. *Cardell* at ¶-25; *McClain* at ¶ 20. On appeal, appellee's burden of persuasion is subject to a manifest-weight-of-the-evidence standard of review. *Id.* at ¶ 21. "In evaluating a manifest weight challenge

7

involving self-defense, we must review the entire record, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to its finding that the state disproved at least one of the elements of self-defense beyond a reasonable doubt." *Id.* at ¶ 22; *Cardell* at ¶ 24. A conviction is not against the manifest weight of the evidence where the fact finder believed appellee's version of events over appellant's version, including rejecting the self-defense claim. *Id.* at ¶-25.

{¶ 14} A manifest-weight claim questions the effect of the evidence in inducing belief of appellant's guilt by questioning whether the fact finder could find the inclination of a greater amount of credible evidence was admitted at trial to sustain that decision than not. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The discretionary power to grant a new trial is in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* Appellant does not meet his burden.

{¶ 15} The victim's testimony was consistently presented through the body-worn camera evidence immediately following the incident and her testimony at trial. In response to the threat posed by the older, female victim in flip flops, tank top, and shorts with some keys on a lanyard, the victim testified that the younger, muscular appellant did the following:

> When he lunged at me so hard he scared me, ripped my necklace off and I was on the ground. And he had me by the hair kicking and punching me and punching me and kicking me in my back. And then I don't know how I got up, but as I went to get up off the ground, off the alley, he says I hate you f***ing spics, and he kicked me straight in the face as hard as he could.

8

{¶ 16} Appellant admitted to using extreme force in the public alleyway against the victim for her heated words and for being hit by "a pair of keys":

> Q: All right. So, Mr. Buck, just to be clear, we are now at a point where, just to clarify, you told her to move her car, there was some heated words back and forth. Then you went to disengage to take the pictures, right?
> A: Yes. After I took the second picture, I started walking towards back onto my property towards the right. . . . That's when she came up from the side and she hit me in the side of the face with the keys. I staggered and went sideways. She was coming across my property and tried hitting me again, and that's when I turned around and basically blasted her one shot and she backed off. . . Yeah, I staggered sideways because my phone was starting to lose grip, but I ended up gaining grip of it back and then that's when I turned around and she was corning back at me again. . . So I had to hit her[.]

{¶ 17} And yet appellant was not afraid for his safety by anything the victim threatened to do to him or his car. "Basically I've had threats like that all the time, so threats can be thrown out all the time. That's why I really didn't take 'em too serious." He also testified, "I cannot run from anybody." When he staggered after being hit by the victim's keys, he was able to immediately recover, "Because, you know, martial arts I was trained in it." Appellant did not assert self-defense during his police interrogation or custody.

{¶ 18} In light of the testimony and evidence previously discussed, we find that any rational fact-finder could have found the inclination of a greater amount of credible evidence was admitted at trial than not to induce the fact-finder's belief of appellant's guilt for the offense of assault. We find no exceptional instance from the record where the evidence admitted at trial weighs heavily against the conviction. Just because appellant

9

testified his use of force against the victim was in self-defense, that does not mandate the fact finder believe him. Appellant did not inform the police he feared for his safety to prompt his use of force in self-defense, and the video and witness evidence did not corroborate his claim of acting out of such fear or his need to cause the victim permanent physical damage. We do not find the fact finder clearly lost its way in resolving conflicts in the evidence to create a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered.

{¶ 19} Appellant's first assignment of error is not well-taken.

### III. Motion for Acquittal

{¶ 20} In support of his second assignment of error, appellant argues that at the close of appellee's case,[1] the trial court should have granted his Crim.R. 29 motion for acquittal because under R.C. 2901.05 "defendants are allowed to defend themselves." Appellant argues the victim admitted to first swinging at him with a weapon such that he had to defend himself and that it was "undisputed testimony that the neighbor was a drug dealer." The trial court's error was a denying the motion "without a critical analysis of the self-defense argument" where appellee failed to prove beyond a reasonable doubt that appellant did not use his force against the victim in self-defense.

{¶ 21} Appellee opposed appellant's motion because "this whole altercation started with Mr. Buck. Couldn't mind his own business and leave her alone when she had

---

[1] Appellant renewed his Crim.R. 29 motion at the close of his defense, which the trial court denied. Appellant does not appeal that decision.

car trouble. He screamed at her, yelled at her, came out after her, then was over by her vehicle." Appellee argued the vehicle was in an alley that was "probably is City property." Appellee argued that even if the victim had first swung her keys at appellant, "the amount of force he used afterwards is not justified. He has provided -- the Officer testified there were no injuries noted to the defendant, and we've seen the injuries noted to the victim."

{¶ 22} The trial court explained why it was denying appellant's motion for acquittal:

> All right, as to your motion for directed verdict, obviously, the Court considers that motion in light most favorable to the non-moving party which would be the State. I do find the State has put forth a prima facie case of assault. With respect to the issue of self-defense, you obviously have the burden of production. They have the burden to prove beyond a reasonable doubt at the conclusion of the case to disprove one of the elements of self-defense. I don't think it rises to the level of beyond a reasonable doubt at this juncture and I feel that they have met that burden as to the self-defense claim as well. So your motion for directed verdict is denied.

{¶ 23} Crim.R. 29(A) states, in part, "The court on motion of a defendant . . . after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." Appellant's motion for acquittal under Crim.R. 29(A) is governed by the same standard as a challenge to the sufficiency of evidence supporting a conviction at trial. *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond

a reasonable doubt." "'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." (Citations omitted.)

*State v. Worley*, 2021-Ohio-2207, ¶ 57.

**{¶ 24}** Appellant does not challenge the sufficiency of the evidence for his conviction for assault under R.C. 2903.13(A). Rather, he challenges the sufficiency of appellee's evidence that he did not act in self-defense under R.C. 2901.05(B)(1), which states. "A person is allowed to act in self-defense . . . If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, . . ., the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense[.]"

**{¶ 25}** Appellant argues he acted in self-defense, but at the time of appellant's motion, he had not yet testified about that claim. Even if he had, as we reviewed the evidence for the first assignment of error, we find that appellee presented proof beyond a reasonable doubt that he did not act in self-defense. Appellant initiated contact with the victim when he left his home to verbally confront her. He never showed that he feared for his safety. Rather, the victim feared for her safety from appellant and raised her hands, one of which was holding the lanyard with "a pair of keys." Her fear was justified because the beating appellant ultimately gave her caused her permanent vision damage.

12

**{¶ 26}** Based on the foregoing, we find that sufficient evidence was submitted to the fact finder such that, after viewing the evidence in a light most favorable to appellee, any rational trier of fact could have found the essential elements of the crime of assault and that appellant did not act in self-defense.

**{¶ 27}** Appellant's second assignment of error is not well-taken.

### IV. Conclusion

**{¶ 28}** On consideration whereof, the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Thomas J. Osowik, P.J.
_____
JUDGE

Gene A. Zmuda, J.

Charles E. Sulek, J.
_____
CONCUR.
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.